UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------

KEVIN PAYNE

        Plaintiff,

   v.

TAMMY CHEN DDS, P.C. d/b/a CENTRAL PARK DENTAL AESTHETICS

        Defendant.

-----------------------------------------------------------

**Civ. No. 1:24-cv-2416**

**COMPLAINT**

Plaintiff, KEVIN PAYNE, by and through his undersigned counsel, EISENBERG & BAUM, LLP, hereby states his Complaint against Defendant(s), TAMMY CHEN DDS, P.C. d/b/a CENTRAL PARK DENTAL AESTHETICS ("CPDA"):

## INTRODUCTION

1. This case is about access – access to information and dental care services. As a Deaf individual, Plaintiff Kevin Payne primarily communicates in American Sign Language ("ASL"). He requires an ASL interpreter to receive equal treatment and equally effective communication.

2. On or before April 11, 2023, Payne sought dental services from CPDA. Rather than offering to provide an ASL interpreter, CPDA informed Payne that he must either communicate via written notes or bring his own interpreter. In need of dental care, Payne scheduled an appointment for the following day, April 12, 2023, and arranged to bring his own interpreter, which he paid for out-of-pocket. Staff protested, sending the interpreter out of the office upon his arrival. After much discussion, CPDA staff finally allowed Payne to use his interpreter if he signed a form expressly waiving CPDA's responsibility to pay for an interpreter for his appointments. Payne felt he had no choice but to sign the form to get the dental care he needed and avoid a fee for same-

day cancellation.

3. Payne is entitled to equal access to CPDA services as are enjoyed by non-disabled persons, and CPDA cannot condition services on a patient's waiver of basic civil rights.

4. Plaintiff seeks declaratory, injunctive, and equitable relief; compensatory and punitive damages; and attorneys' fees and costs to redress Defendant's unlawful discrimination on the basis of disability in violation of Section 1557 of the Patient Protection and Affordable Care Act ("ACA") and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*;

## PARTIES

5. Plaintiff KEVIN PAYNE ("Plaintiff" or "Payne") is a resident of New York who is substantially limited in the major life activities of hearing and speaking. Thus, he has a disability within the meaning of city, state, and federal civil rights laws.

6. Defendant TAMMY CHEN DDS, P.C., is a professional corporation engaged in the practice of dental medicine with a principal place of business located at 200 West 57th Street, Suite 303, New York, NY 10019. Defendant does business as CENTRAL PARK DENTAL AESTHETICS ("Defendant" or "CPDA"), located at 200 West 57th Street, Suite 303, New York, NY 10019. At all times relevant to this Complaint, Defendant has been licensed and doing business in the State of New York. Defendant's business is a public accommodation within the meaning of federal, state, and city civil rights laws.

7. Upon information and belief, Defendant is a recipient of federal financial assistance, including Medicare reimbursements.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction for the federal law claims pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the laws of the United States. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims arising under state and city law.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because, among other factors, the Defendant resides within the jurisdiction of this district, and a substantial part of the events that give rise to the claims occurred in this district.

## STATEMENT OF FACTS

10. Payne is a Deaf individual who primarily communicates in American Sign Language. He is substantially limited in the major life activities of hearing and speaking within the meaning of federal, state, and city civil rights laws.

11. Some background on deaf culture is necessary to understand the balance of this case. English and ASL are different languages; therefore, Payne is unable to communicate effectively by reading lips. Lip reading is the ability to understand another speaker's speech by watching the speaker's lips. It is no substitute for direct communication through a qualified sign language interpreter because many mouth movements appear identical on the lips. What is more, even if a primary ASL user were able to determine the sounds appearing on a speaker's lips, he or she would still not necessarily understand the English language because English and ASL are distinct languages with different grammatical structures. As another example, ASL and French Sign Language are also distinct languages.

12. Due to the inherent limitations of lipreading, he cannot make out most of the aural information that is presented during important healthcare communications, such as treatment

planning and consultations. It is not possible for people who lipread to consistently understand everything that is said by lipreading alone. Common difficulties associated with lipreading include but are not limited to: normal speech is too fast to lipread easily, many sounds are not seen on the lips, many speech patterns look similar on the lips, and many sounds look alike, even though they are different.

13. There are many factors outside of Payne's control that reduce the effectiveness of lipreading because many people, including dental care professionals and other patients, may not speak clearly, have facial hair or accents that interfere with lipreading, cover parts of their mouth when speaking, and/or may not look directly at the person who is lipreading.

14. The American Dental Association educates its Dentist members that: "the dental practice must give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." Appropriate auxiliary aids include "Interpreters on-site or through video remote interpreting (VRI) services." Section 1557: Auxiliary Aids and Services, American Dental Association, https://www.ada.org/en/resources/practice/legal-and-regulatory/section-1557-auxiliary-aids-and-services (accessed March 29, 2024).

15. On or before April 11, 2023, Payne sought dental services from CPDA by contacting the Defendant's office using a video phone. This device allows a deaf individual to make calls via an interpreter through video relay services. He asked to make an appointment and requested American Sign Language interpretation services.

16. During this call, CPDA informed Payne that he must communicate via written notes or bring his interpreter.

17. Payne scheduled an appointment for the following day, April 12, 2023, and arranged to bring his interpreter, for whose services he paid out of his pocket.

18. When the interpreter arrived on April 12, 2023, CPDA's staff sent him outside, reiterating that they refused to pay for interpretation services. Payne arrived and brought the interpreter back inside, to which staff once again protested. Payne explained that he hired his own interpreter per their phone instructions the day before.

19. At this, staff required Payne to sign a form stating that all dental appointments would be performed via written communication or an interpreter provided by the individual; it expressly waived CPDA's responsibility to provide an interpreter for appointments:

---

**Central Park Dental Aesthetics**

I hereby confirm that my dental appointments will be performed by written communication OR by an interpreter provided by me. Any written acceptance of treatment being performed will be legal consent for treatment.

An Interpreter will not be brought in for appointments by the office and the patient agrees to written communication for appointments moving forward for treatment.

If a patient chooses to bring an interpreter the office is not responsible for the charge. As appointment will not be exceeding the 2-hour minimum requirement.

I have read and agree to the information above.

Witnesses: [signature]                          Date: 04/12/23
Witnesses: Crysten Ohl                          Date: 04/12/23

Patient Name: Kevin Payne
Patient Signature: [signature]                  Date: April 13, 2023

20. Payne signed the form to get the dental care he needed and avoid a fee for same-day cancellation.

21. Without an interpreter, Payne is unable to fully and equally participate in his care and treatment.

22. Deaf patients are entitled to communicate through American Sign Language interpreters.

23. By asking Payne to waive his right to an interpreter and by failing to provide an interpreter, CPDA violated Payne's rights as a disabled person under federal and city civil rights laws.

24. Upon information and belief, based on Payne's interactions with CPDA and CPDA's stated policies, Defendant refuses to hire qualified sign language interpreters as a matter of policy and practice.

25. Because CPDA failed to ensure effective communication, Payne was offered services that were objectively inferior to those provided to hearing patients.

26. Accordingly, Payne, as a person seeking dental treatment, had an expectation interest in the ability to fully participate in his own dental care and all of the benefits and services provided by CPDA, including but not limited to vital discussions with dental staff. Payne also had an expectation interest in being able to communicate with and be informed about his care by CPDA in his primary or preferred language or through some other equally effective form of communication because that is what federal antidiscrimination laws require.

27. CPDA knew or should have known of its obligations as a health care provider under city and federal anti-discrimination laws to develop policies to promote compliance with these statutes and to provide reasonable accommodations, including the provision of ASL interpreters

to ensure equal communication, participation, and treatment of deaf individuals.

28. CPDA knew or should have known that its actions and inactions created an unreasonable risk of causing Payne greater levels of emotional distress than a hearing person would be expected to experience.

29. Payne seeks any and all remedies available under contract law, including expectation-interest damages and specific performance. CPDA must honor his right to understand his treatment and dental history by providing ASL interpreters to explain his prior history and procedures. A recitation of his care, with the ability to ask questions, would put Payne in as good a position as if the contract had been performed.

30. CPDA repeatedly and intentionally discriminated against Payne and acted with deliberate indifference to his communication needs, causing him to endure humiliation, fear, anxiety, and emotional distress.

31. CPDA intentionally and deliberately discriminated against Payen by failing to make reasonable modifications in policies, practices, or procedures.

32. Payne would seek Defendant's services in the future given its proximity to his residence and the fact that he previously visited CPDA, which maintains his dental records and history, but he is deterred from doing so due to the discrimination he faced and expects to face in the future.

## CAUSES OF ACTION

### CLAIM I:   Violations of the Patient Protection and Affordable Care Act

33. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

34. At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act has been in full force and effect and applied to the Defendant's conduct.

35. At all times relevant to this action, Plaintiff has had substantial limitations to the major life activities of hearing and speaking and has been an individual with a disability within the meaning of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116.

36. At all times relevant to this action, Plaintiff's primary language for communication has been American Sign Language (and not English), and Plaintiff has had limited ability to read, write, speak, or understand English. Plaintiff has therefore been an individual with limited English proficiency within the meaning of Section 1557 of the Patient Protection and Affordable Care Act, 45 C.F.R. § 92.4.

37. At all times relevant to this action, Defendant received federal financial assistance, including Medicare reimbursements, and was principally engaged in the business of providing health care. Therefore, Defendant is engaged in a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

38. Pursuant to Section 1557 of the Patient Protection and Affordable Care Act, "an individual shall not, on the ground prohibited under . . . section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116.

39. Under the Affordable Care Act, federal regulations adopt "the standards found at 28 CFR 35.160 through 35.164," which come from Title II of the Americans with Disabilities Act. 45 C.F.R. § 92.102(a).

40. Under the Affordable Care Act, federal regulations provide that a "[covered] entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal

opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a [covered] entity. . . . In determining what types of auxiliary aids and services are necessary, a [covered] entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b), *adopted by* 45 C.F.R. § 92.102(a). This regulation authoritatively construes the Affordable Care Act and was violated by Defendant.

41. Further, a covered entity "shall not require an individual with a disability to bring another individual to interpret for him or her." 28 C.F.R. § 35.160(c)(1), *adopted by* 45 C.F.R. § 92.102(a). This regulation authoritatively construes the Affordable Care Act and was violated by Defendant.

42. Under the Affordable Care Act, federal regulations provide that a covered entity "shall take reasonable steps to ensure meaningful access to such programs or activities by limited English proficient individuals," 45 C.F.R. § 92.101(a), and that where an individual "requires the provision of language assistance services, such services must be provided free of charge, be accurate and timely, and protect the privacy and independence of the individual with limited English proficiency. Language assistance services may include: (i) Oral language assistance, including interpretation in non-English languages provided in-person or remotely by a qualified interpreter for an individual with limited English proficiency, and the use of qualified bilingual or multilingual staff to communicate directly with individuals with limited English proficiency; and (ii) Written translation, performed by a qualified translator, of written content in paper or electronic form into languages other than English." 45 C.F.R. § 92.101(b)(2)(i)–(iv). This regulation authoritatively construes the Affordable Care Act and was violated by Defendant.

43. As set forth above, Defendant discriminated against Plaintiff, on the basis of disability, in violation of the Patient Protection and Affordable Care Act and its implementing regulations.

44. The Patient Protection and Affordable Care Act, by incorporating the enforcement mechanism of the Rehabilitation Act, extends a cause of action to "any person aggrieved" by discrimination in violation thereof. 42 U.S.C. § 18116(a).

45. The Rehabilitation Act—and by extension, the ACA—explicitly authorizes the remedies available under 42 U.S.C. § 1981a. Specifically, 29 U.S.C. § 794a(a)(2) provides that "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.) (and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e–5), applied to claims of discrimination in compensation) shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

46. Accordingly, 29 U.S.C. § 794a(a)(2) provides that anyone bringing claims of discrimination against a recipient of federal funding may avail themselves of the remedies in 42 U.S.C. § 2000e-5(e)(3), which in turn states: "*In addition to* any relief authorized by section 1981a of this title . . . an aggrieved person may obtain [other] relief . . . ." 42 U.S.C. § 2000e-5(e)(3)(B) (emphasis added). And 42 U.S.C. § 1981a(b)(3) expressly permits compensatory damages for "emotional pain" and "mental anguish."

47. As such, "*any person* aggrieved by *any act or failure to act by any recipient of Federal Assistance . . . under section 794*" is entitled to the "*remedies*, procedures, and rights" not only in "title VI of the Civil Rights Act of 1964," but also in "subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e–5)." 29 U.S.C. § 794a(a)(2) (emphasis added).

48.     42 U.S.C. § 2000e-5(e)(3), in turn, authorizes certain relief "[i]n addition to any relief authorized by section 1981a," and 42 U.S.C. § 1981a(b)(3) expressly permits compensatory damages for "emotional pain" and "mental anguish."

49.     Defendant has failed to implement policies, procedures, and training of staff necessary to ensure compliance with the ACA.

50.     As set forth above, Defendant discriminated against Plaintiff on the basis of his disability in violation of the ACA and its implementing regulations and, by doing so, aggrieved Plaintiff under the statute and its implementing regulations.

51.     The plaintiff is also entitled to other forms of compensatory damages beyond emotional distress damages. The defendant is subject to remedies traditionally available in suits for breach of contract. Here, when patients like Plaintiff arrive seeking treatment, they expect that they will be able to communicate with their healthcare providers about their care. Plaintiff also had an expectation interest in being able to communicate with and be informed about his care by Defendant's staff in his primary or preferred language or through some other equally effective form of communication because that is what federal antidiscrimination laws require.

52.     Defendant denied Plaintiff these expectation interests by failing to accommodate his disability and failing to provide equal treatment that it gives to non-disabled patients. Accordingly, the Plaintiff should be entitled to compensatory damages under his expected interest.

53.     Plaintiff is therefore entitled to declaratory and injunctive relief, nominal damages, compensatory damages, and attorneys' fees, costs, and disbursements for the injuries and loss he sustained as a result of the Defendant's discriminatory conduct and deliberate indifference as alleged under 42 U.S.C. § 18116(a).

**CLAIM II:   Violations of the New York City Human Rights Law**

54. Plaintiff incorporates by reference all preceding paragraphs and realleges them in support of this claim.

55. At all times relevant to this action, the NYCHRL has been in full force and effect and has applied to Defendant's conduct.

56. At all times relevant to this action, Plaintiff has had substantial impairment to the major life activities of hearing and speaking and has therefore been a qualified individual with a disability within the meaning of N.Y.C. Admin. Code § 8-102(16)

57. At all times relevant to this action, Defendant has operated a public accommodation within the meaning of N.Y.C. Admin. Code § 8-102(9) and has been a covered entity within the meaning of N.Y.C. Admin. Code §§ 8-102(1) & (17).

58. Pursuant to N.Y.C. Admin. Code § 8-107(4), it shall be unlawful discrimination for "any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of . . . disability . . . of any person directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

59. Pursuant to N.Y.C. Admin. Code § 8-107(15)(a), a covered entity "shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity."

60. The NYCHRL further requires that places of public accommodations engage in a "cooperative dialogue" with persons who are or may be entitled to an accommodation. N.Y.C. Admin. Code § 8-107(28). This obligation requires a public accommodation to "engage in good faith in a written or oral dialogue concerning the person's accommodation needs; potential

accommodations that may address the person's accommodation needs, including alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the covered entity." N.Y.C. Admin. Code § 8-102.

61. Plaintiff is an aggrieved person within the meaning of N.Y.C. Admin. Code § 8-502(a), which extends a cause of action and relief to "any person claiming to be aggrieved" by the discrimination of a person on the basis of his disability.

62. Defendant discriminated against Plaintiff on the basis of his disability by withholding the accommodations, advantages, facilities, or privileges of Defendant's services in violation of N.Y.C. Admin. Code § 8-107(4)(1)(a); by failing to effectively accommodate Plaintiff's disability in violation of N.Y.C. Admin. Code § 8-107(15)(a); and by failing to engage in a cooperative dialogue in violation of N.Y.C. Admin. Code § 8-107(28).

63. Without injunctive relief, there is a clear risk that Defendant's actions will recur with Plaintiff or other deaf and hard-of-hearing individuals.

64. Plaintiff is entitled to damages even if the "only injury is the deprivation of a right granted or protected by [the statute]." N.Y.C. Admin. Code § 8-502(h)(2).

65. Plaintiff seeks an award of compensatory damages for the injuries and loss sustained as a result of Defendant's discriminatory conduct pursuant to N.Y.C. Admin. Code § 8-502(a).

66. Plaintiff also seeks an award of punitive damages to rectify and deter Defendant's discriminatory conduct pursuant to N.Y.C. Admin. Code § 8-502(a).

67. Plaintiff is further entitled to an award of attorney's fees, costs, and disbursements pursuant to N.Y.C. Admin. Code § 8-502(g).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Issue an injunction forbidding Defendant from implementing or enforcing any policy, procedure, or practice that denies deaf individuals meaningful access to, and full and equal enjoyment of, Defendant's facilities, services, or programs in violation of Section 1557 of the Patient Protection and Affordable Care Act and the New York City Human Rights Law;

B. Issue an injunction ordering Defendant to:

   i. offer an interpreter for the patient at no cost to the patient whenever an agent or employee encounters a patient whose primary language is something other than English;

   ii. train all employees, staff, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under city and federal law;

   iii. honor Plaintiff's right to understand his dental care history by providing American Sign Language interpreters to explain his prior history and procedures because a recitation of his care, with the ability to ask questions, would put him in as good a position as if the contract had been performed;

   iv. develop, implement, promulgate, and comply with a policy requiring a clear offer of language assistance services. If a patient declines language assistance services after a bonafide offer of qualified sign language interpreter services at Defendant's own cost, document such refusal in a specific and uniform location in the patient's dental records, such that it can be readily retrieved in a review of those records. Such documentation shall include, at a minimum: (1) an acknowledgment, signed by the patient, that the availability of free language assistance services was

explained to the patient in the patient's primary language and that he or she knowingly declined those services; (2) the name of the interpreter used to explain, in the patient's primary language, the patient's right to free language assistance services; and (3) the patient's reason or refusing language assistance services.

C. Order Defendant to take such affirmative steps as may be necessary to restore, as nearly as practicable, Plaintiff to the position he would have been in but for the discriminatory conduct.

D. Award to Plaintiff:

  i. Nominal damages;

  ii. Compensatory damages;

  iii. Punitive damages;

  iv. Reasonable costs and attorney's fees;

  v. Interest on all amounts at the highest rates and earliest dates allowed by law; and

  vi. Any and all other relief that this Court deems just and appropriate.

Dated: March 29, 2024                          Respectfully submitted,

**EISENBERG & BAUM, LLP**

/s/Andrew Rozynski
Andrew Rozynski, Esq. (NY#505446)
24 Union Square East, Penthouse
New York, NY 10003
Telephone: (212) 353-8700
Fax: (917) 591-2875
arozynski@eandblaw.com
*Attorneys for Plaintiffs*